UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ISAACS CARS, INC., f/k/a/ AUTORAMA, INC.,                        APPELLANT

v.                        CIVIL ACTION NO. 3:10-CV-69-S

GERALD T. WOODS,                        APPELLEE

**MEMORANDUM OPINION**

Isaacs Cars, Inc. appeals the bankruptcy court's decision denying its bid to have certain debts owed it by appellee Gerald T. Woods ("Gerald") declared non-dischargeable under the bankruptcy code. The decision below will be affirmed and the appeal dismissed.

**I**

As determined by the bankruptcy court after trial, the facts of the case are as follows. Gerald co-owned AutoSource-USA, LLC, a used car dealership, with his brother, Kenneth Woods ("Ken"). In 1999, AutoSource entered into a "Revolving Floor Plan Loan and Security Agreement" with Isaacs Cars (then known as Autorama, Inc.), under which Isaacs advanced a line of credit to AutoSource for the purpose of purchasing vehicles. AutoSource was then to hold the vehicles and any proceeds from their sale in trust until Isaacs received full payment of the debt owed to it; Isaacs was to retain each vehicle's original title as collateral to be returned to either AutoSource or the vehicle's ultimate purchaser once it had been repaid with respect to that vehicle.

The parties have stipulated that between June and December of 2007, AutoSource sold twenty-seven vehicles "out of trust." That is, it sold the vehicles to various hapless individuals before turning around and providing the titles to those vehicles to Isaacs in order to obtain funds from the line of credit. The purchasers never obtained certificates of title to their vehicles, and Isaacs received only slips of paper entitling it to cars that AutoSource had sold. AutoSource, meanwhile,

collected doubly on each car. This scheme (along with other financial stresses) predictably led to AutoSource's collapse, at which time it owed Isaacs $98,050. That debt fell to Gerald because he personally guaranteed the security agreement. At least partially as a result of this new liability, Gerald filed for Chapter 7 bankruptcy protection on November 5, 2007.

Isaacs argued in the bankruptcy court that Gerald's indebtedness to it should be ruled non-dischargeable under three sections of the bankruptcy code. Pursuant to 11 U.S.C. § 523(a)(2)(A), it argued that the money was obtained by "false pretenses, a false representation, or actual fraud." Under § 523(a)(4), it asserted that the debt was "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." And under § 523(a)(6), Isaacs claimed that the debt was "for willful and malicious injury by the debtor to another entity or to the property of another entity." The bankruptcy court found each of these theories lacking. It found no fraudulent intent on Gerald's part, concluding that he acted essentially as no more than a courier: while he personally delivered each of the titles to Isaacs, he did not know that the vehicles had been sold. Gerald did not sell the vehicles himself, and he was not present at the lot when they were sold. Indeed, Gerald spent no more than an hour or two per week at AutoSource (he was employed at another car dealership as a used car manager). When Isaacs's owner inquired about vehicles that appeared to be missing, Gerald replied that he would contact his brother. Ken responded to Gerald's queries by claiming that the vehicles were either being serviced or cleaned, and that he would take care of the matter. Gerald evidently trusted Ken's explanations, which he reported to Isaacs.

With evidence of these facts in hand, the bankruptcy court concluded that Gerald "had no knowledge that AutoSource was selling vehicles out of trust," and therefore that he could not have formed any intent to defraud. Refusal to discharge was therefore unwarranted under subsection

(a)(2)(A). For the same reason, the court found that there could be no embezzlement, larceny, or willful injury of another's property under subsections (a)(4) or (a)(6). The only remaining possibility for refusing to discharge the debt was the theory that an express or technical trust existed between the parties, such that a fiduciary duty attached under subsection (a)(4). The court found no such trust, and therefore no reason to save Isaacs from the altar.

## II

Isaacs raises two issues on appeal. First, it argues that the bankruptcy court erred in its factual determination that Gerald lacked fraudulent intent. Second, it asserts that the court's legal determination that no express or technical trust existed was mistaken. We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Baker & Getty Fin. Servs.*, 106 F.3d 1255, 1259 (6th Cir. 1997); Bankr. R. 8013. A factual conclusion is "clearly erroneous if, based on the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355, 365 (6th Cir. 2009) (citations and internal quotation marks omitted).

For a debt to be excepted from discharge, the creditor must establish each element of the invoked exception by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions to discharge are strictly construed against the creditor. *In re Rembert*, 141 F.3d 277, 281 (6th Cir. 1998); *In re Ward*, 857 F.2d 1082, 1083 (6th Cir. 1988).

### A

A debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . .

false pretenses, a false representation, or actual fraud . . . ." While there are thus three enumerated sorts of actions rendered non-dischargeable, the Sixth Circuit lumps them together under a single four-part test: in order to render a debt non-dischargeable, "a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *In re Rembert*, 141 F.3d at 280-81 (footnote omitted). A debt is non-dischargeable under subsection (a)(4) if it is owed because of (inter alia) embezzlement or larceny. Proof of either of these acts requires a showing of fraud. *See In re Brady*, 101 F.3d 1165, 1173 (6th Cir. 1996) (embezzlement); *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991) (per curiam) (citations omitted) (larceny). And pursuant to subsection (a)(6) discharge is disallowed if it arose out of "willful and malicious injury by the debtor to another entity or to the property of another entity"; this too requires intent to do harm—which means, in this case, intent to defraud. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Thus invocation of any of these causes for declaration of non-dischargeability requires proof of fraudulent intent. A debtor's intent is assessed from his subjective point of view, taking into account the totality of the circumstances. *See In re Rembert*, 141 F.3d at 281-82.

The bankruptcy judge ruled that Isaacs had failed to prove intent to defraud. (Isaacs does not dispute the court's implicit conclusion that proof of Gerald's fraudulent intent, rather than someone else's, is required if it is to prevail.) The judge found Gerald's testimony to be credible, *In re Woods*, 418 B.R. 226, 228 (Bankr. W.D. Ky. 2009), and determined that while Gerald was aware that AutoSource was facing financial problems, he "had no knowledge that AutoSource was selling

vehicles out of trust." *Id.* at 230. His testimony was that he relied on Ken to run the business and trusted his brother's explanations for the absence of the vehicles about which Isaacs inquired. *Id.* Without knowledge of AutoSource's fraudulent activities (or at least gross recklessness as to their existence, which the bankruptcy court also did not find), there could be no subjective intent to deceive. *See id.*

To rebut the bankruptcy court's conclusion Isaacs produces a litany of mostly irrelevant facts. The lynchpin of the court's decision is its determination that Gerald lacked knowledge of the out-of-trust sales. In response, Isaacs is able to muster only the testimony of Andrew Schott, the president of Quality Auto (another dissatisfied creditor of Gerald and AutoSource) to the effect that Gerald "had to" have known that his company was selling cars out of trust. As between the two witnesses, the bankruptcy court found Gerald the more credible, and this court is not in a position to second-guess his assessment. Similarly, the evidence indicating that Gerald played so substantial a role in AutoSource that he must have known of the fraudulent activity runs up against his own credible testimony. Gerald's involvement in the business, even if more substantial than as he presents it, does not appear to be of a kind that would necessarily have resulted in his awareness of the scheme. He was not, for instance, present when the vehicles were sold, and he apparently believed Ken's assurances that they were legitimately absent from the lot for service or cleaning. Simply put, the evidence before the court is insufficient to convince us that the bankruptcy judge committed clear error in determining that Gerald lacked the knowledge required for a finding of fraudulent intent.

**B**

The remaining issue is whether an express or technical trust existed such that the "defalcation while acting in a fiduciary capacity" clause of 11 U.S.C. § 523(a)(4) comes into play. *See In re Brady*, 101 F.3d at 1173 ("The term 'fiduciary' under section 523(a)(4) applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter or equity" (citation and internal quotation marks omitted).).

"To establish the existence of an express or technical trust, a creditor must demonstrate: '(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary.'" *In re Bucci*, 493 F.3d 635, 640 (6th Cir. 2007) (*quoting In re Blaszak*, 397 F.3d 386, 391-92 (6th Cir. 2005)). A statute may create a trust, if it "defines the trust res, imposes duties on the trustee, and [if] those duties exist prior to any act of wrongdoing. " *Id.* Isaacs's first argument is that KRS 186A.220(5) creates such a trust. That statute requires a motor vehicle dealer,

> [w]hen he assigns the vehicle to a purchaser for use, [to] deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon. The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title.

Assuming without deciding that this statute creates a trust subject to subsection (a)(4), we conclude that the text of the bankruptcy code dooms Isaacs's argument here. It reads, in relevant part: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." The purpose is plainly to protect the beneficiaries of a trust whose trustee has misappropriated its assets. A trustee who has done so would owe the trust (and/or its beneficiaries) a debt "*for* fraud or defalcation." Here,

however, the beneficiary of the putative trust is the vehicle purchaser, who should rightfully be in possession of the title certificate. Regardless of the language of KRS 186A.010(1) (discussing the purposes of Kentucky's automated vehicle registration and titling system), any trust created by KRS 186A.220(5) is simply not for the benefit of a future creditor who acquires what turns out to be a worthless scrap of paper as collateral for a loan. If anything, the creditor is a party to the defalcation, having wrongfully received property held in trust for someone else. If Gerald or AutoSource breached a fiduciary duty under the motor vehicle dealer statute, it was to the various vehicles' purchasers, who did not receive the goods putatively held in trust for them.

Isaacs's last hope is its argument that its Security Agreement with AutoSource created an enforceable fiduciary duty. The agreement provides: "[AutoSource] agrees to hold all vehicles and proceeds thereof in trust until complete payment of the indebtedness to [Isaacs] respecting such vehicles . . . ." (Appellee's Ex. A, Security Agreement, at 1.) This contract language is insufficient to fulfill the elements of trust creation set out above. Despite the use of the word "trust" (and the parties' designation of AutoSource's scheme as selling vehicles "out of trust") it is plain that the vehicles were collateral for a loan, not the *res* of a trust established for Isaacs's benefit. Accordingly subsection (a)(4) offers Isaacs no help here, either.

\*   \*   \*

All of Isaacs's arguments thus fail. The judgment of the bankruptcy court will be affirmed in full by separate order.